[Cite as *State v. Rice*, 2017-Ohio-9114.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160668 |
| | | C-160669 |
| Plaintiff-Appellant, | : | C-160670 |
| vs. | : | TRIAL NOS. 15TRC-45123A |
| | | 15TRC-45123B |
| ANTHONY RICE, | : | 15TRC-45123D |
| Defendant-Appellee. | : | |
| | | *O P I N I O N.* |


Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed in C-160669 and C-160670; Reversed and Cause Remanded in C-160668

Date of Judgment Entry on Appeal:  December 20, 2017


*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Christopher Lui*, Appellate Director, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**MILLER, Judge.**

{¶1}    Defendant-appellant Anthony Rice appeals the judgments of the Hamilton County Municipal Court convicting him, after a jury trial, of operating a vehicle while under the influence of alcohol or drugs ("OVI"), operating a vehicle with a high-tier prohibited level of alcohol in his breath ("OVI per se breath high tier" or "OVI per se"), and the reckless operation of a vehicle.  In four assignments of error, Rice argues that the trial court committed prejudicial error by denying his motion to dismiss the charges based on a due process violation, by denying his motion to suppress the evidence because the police lacked probable cause to arrest him for OVI, and by admitting hearsay evidence at trial, and that his convictions were against the manifest weight of the evidence.

{¶2}    We find no merit to the assigned errors, but the trial court imposed a void sentence for the OVI offense.  Therefore, we vacate that sentence and remand the cause in the appeal numbered C-160668 for the trial court to correct the judgment of conviction.  In all other respects, we affirm.

## I. Background Facts and Procedure

{¶3}    Rice was involved in a two-car collision on Reading Road in the Avondale area of Cincinnati on the evening of October 29, 2015.  Rice claimed that he had been driving down the road when another driver, later identified as Jamese Davis, pulled out in front of him.  The investigation by Cincinnati Police Officer Corey Jones at the scene included the administration of two standardized field sobriety tests.  Although Rice denied consuming any alcohol, the results of the investigation indicated that Rice had been impaired by alcohol or drugs at the time of the crash.  Officer Jones arrested Rice for OVI and discovered 28 grams of marijuana in Rice's pocket.

{¶4} After transporting Rice to the safety of the District Four police station, Officer Jones administered the standardized horizontal-gaze-nystagmus test. Rice exhibited four of the six signs of impairment during that test. Officer Jones next obtained a urine sample from Rice, but later discarded it without testing it after another officer had administered a timely breathalyzer test. Rice's breath test demonstrated a breath alcohol concentration of more than two times the legal limit for alcohol. As relevant to these appeals, Officer Jones subsequently charged Rice with OVI, "OVI per se breath high tier," and the reckless operation of a vehicle.

{¶5} Prior to trial, Rice moved to dismiss the charges on due process grounds because Officer Jones had discarded the urine sample. Rice also moved to suppress certain evidence, claiming in part that Officer Jones had lacked probable cause to arrest him. The trial court denied both motions after a combined pretrial hearing.

{¶6} At trial, the state presented evidence from Rodney White, another driver who had called 911 to report the accident. Consistent with his 911 call, White testified that Rice's black Jaguar had passed him at a very high rate of speed and had been weaving through traffic and had "fishtailed" before speeding through an intersection and colliding with the other vehicle. He estimated that when Rice passed him just before the collision, Rice had been driving more than 80 m.p.h. in a 25 m.p.h. zone. While White saw the impact, he did not see the location of the other vehicle before the impact.

{¶7} Officer Jones testified to his investigation and the signs of alcohol or drug impairment that he had observed both before and after the arrest. He acknowledged that he had not smelled any alcohol on or about Rice until he placed him in his cruiser. Officer Jones's testimony was corroborated by the video captured

by the camera on his police cruiser. Police Officer James Pike authenticated the breath-test result that showed Rice's breath-alcohol content was .171 grams of alcohol per 210 liters of breath, .001 grams above the high-tier prohibited alcohol level for breath.

{¶8} Although Davis, the other driver involved in the collusion, did not testify, Officer Jones was permitted to testify, over Rice's objection, to what she had told him at the scene. Davis implicated Rice in the accident and speculated that he had been impaired.

{¶9} Rice, testifying in his defense, stated that Davis caused the accident when she pulled her vehicle out of the Family Dollar parking lot and struck the passenger side of his vehicle as he drove north on Reading Road. Rice claimed he had just passed through the light at the intersection and was moving into the passing lane. The collision pushed his vehicle into the lane of oncoming traffic, causing him to steer his vehicle across the sidewalk and into a tree. He denied consuming any alcohol or smoking any marijuana on the day of the accident, and contended that he was not driving faster than 35 m.p.h. on Reading Road. Further, he claimed that the collisions deployed his airbags, totaled his vehicle, and left him "discombobulated."

{¶10} The jury found Rice guilty of all charges. The trial court determined that the OVI offense and OVI per se offense were allied offenses of similar import that merged under R.C. 2945.25. The state elected the OVI per se offense for sentencing, but the trial court imposed sentences on all offenses, including the OVI offense.

## II. Analysis

## A. Motion to Dismiss for Due Process Violation

{¶11} In his first assignment of error, Rice contends that the trial court erred in denying his motion to dismiss the OVI-related charges because the state's failure to preserve his urine sample denied him due process of law. Rice argues that the urine sample was (1) materially exculpatory evidence or, alternatively, (2) potentially useful evidence.

{¶12} The destruction of evidence by officers or agents of the state may result in a due process violation. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The test for determining any due process violation depends on the character of the evidence. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 73. If the evidence is materially exculpatory, the state's destruction of that evidence constitutes a violation of the defendant's right to due process. *Id.* at ¶ 74, citing *Trombetta*. Evidence is materially exculpatory when it possesses " 'an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *Id.*, quoting *Trombetta* at 489.

{¶13} In contrast to circumstances involving materially exculpatory evidence, the destruction of "potentially useful evidence does not constitute a denial of due process of law" unless a criminal defendant can show "bad faith on the part of the police." *Youngblood* at 58, cited in *Powell* at ¶ 76. *See Illinois v. Fisher*, 540 U.S. 544, 545, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004).

{¶14} "The defendant bears the burden to show that the evidence was materially exculpatory." *Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, at ¶ 74. Rice argued below that the urine sample was materially exculpatory, relying on Officer Jones's testimony concerning the odor of alcohol and Rice's denial of drinking. But Rice has abandoned that argument. He now argues that the urine sample was materially exculpatory because his breath-test result subjected him to a higher penalty because it was barely over the high-tier prohibited limit for breath, the difference between his result and the tier threshold was less than the margin of error, and a test of his urine may have indicated a result below the high-tier prohibited limit for alcohol in his urine.

{¶15} Rice's current argument is based on his understanding (but not any expert testimony) that there is a proportional and evidentiary-relevant relationship existing between a breath-test result and a urine-test result, both of which are designed to estimate the blood-alcohol content of a driver. But Rice's argument fails for at least two reasons. First, evidence is not materially exculpatory if "no more can be said [of the evidence than it] could have been subject to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57, 109 S.Ct. 333, 102 L.Ed.2d 281. At best, the untested urine sample Officer Jones discarded after obtaining a breath-test result showing a per se violation from a properly functioning breath-test machine falls within this category. *See State v. Doup*, 5th District Knox No. 08CA13, 2009-Ohio-117, ¶ 12. *See also Trombetta*, 467 U.S. at 489, 104 S.Ct. 2528, 81 L.Ed.2d 413. More likely, the urine sample would have inculpated Rice in another high-tier drunk driving offense and in driving under the influence of drugs, as Officer Jones found a quantity of marijuana on him.

{¶16}   Second, even assuming that the breath-test result was inaccurate and the urine sample might have been exculpatory, Rice could have impeached his breath-test result at trial by raising the margin of error argument without resorting to any urine-test result. Thus, Rice had an effective and reasonably available alternative means to demonstrate his innocence. *See Trombetta* at 490.

{¶17}   Rice has failed to meet his burden to show that the untested urine sample was materially exculpatory.   Therefore, Officer Jones's destruction of the urine sample could not rise to the level of a due process violation absent evidence of bad faith.

{¶18}   Courts have held that bad faith in connection with destruction of potentially useful evidence involves "something more than bad judgment or negligence*," State v. Acosta*, 1st Dist. Hamilton Nos. C-020767, C-020768, C-020769, C-020770 and C-020771, 2003-Ohio-6503, ¶ 9.   Requiring a defendant to demonstrate bad faith in support of the due process violation "limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶19}   Here, Officer Jones testified to the facts concerning the discarded urine sample at the hearing on the pretrial motions.  He stated that when he arrested Rice for OVI and transported him to Cincinnati's District Four police station, no one was available to administer a breath test at that station.  His supervisor then advised him to obtain a urine sample.  Although he was not familiar with the urine sample collection procedures, Officer Jones obtained the urine sample before learning that

he was to transport Rice to the District Five station for a breath test. At the District Five station, another officer successfully administered a breath test with a result of .171 grams per 210 liters of breath.

{¶20} After returning to the District Four station, Officer Jones discarded the urine sample without testing it. He stated that he disposed of the urine sample because he believed it was appropriate to do so after obtaining a breath-test result, and he was not confident that he had followed the proper procedures in collecting the urine sample in the first place.

{¶21} In his motion to dismiss, Rice did not allege that Officer Jones had acted in bad faith. But the trial court addressed the issue after rejecting Rice's claim that the urine sample was materially exculpatory. After considering the testimony at the hearing, the trial court found no evidence of bad faith.

{¶22} Rice now argues that Officer Jones's testimony demonstrates bad faith, but with this record Rice cannot place this case in "that class of cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶23} The evidence showed only that Officer Jones did not know what to do with the untested sample that likely would have further incriminated Rice. Thus, we conclude that Officer Jones did not act in bad faith when he discarded the urine, and that the government did not violate Rice's due process rights.

{¶24} In sum, Rice has failed to demonstrate that the trial court erred in denying his motion to dismiss the OVI-related charges. Accordingly, we overrule the first assignment of error.

## B. Motion to Suppress for Lack of Probable Cause

{¶25} In his second assignment of error, Rice contends the trial court erred in denying his motion to suppress. He maintains that Officer Jones lacked probable cause to arrest him for OVI. Our review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. First, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Next, we must independently determine whether those facts meet the constitutional standard as a matter of law. *Id.*

{¶26} The standard for determining if a law enforcement officer had probable cause to arrest an individual for OVI is whether "at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), quoted in *State v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 15. This test is objective. *Bryant* at ¶ 15.

{¶27} At the suppression hearing, Officer Jones testified that when he arrived on the scene of the accident, Rice's vehicle was crashed into a tree and Rice was standing outside of it lighting a cigar. He noticed a cut on Rice's hand that firefighters had treated. He asked Rice if he wanted to go to the hospital, but Rice declined. Officer Jones also noticed that Rice, who had admitted to operating his vehicle, was acting "weird" and "confused," had bloodshot eyes, was slurring his speech, and had difficulty producing his driver's license. These facts plus the circumstances of the wreck that left both vehicles "totaled out" led him to suspect that alcohol may have been involved. He asked Rice to perform two standardized

field sobriety tests and administered them in compliance with the National Highway Transportation and Safety Association ("NHTSA") requirements. Rice swayed and lost his balance throughout the walk-and-turn test, including when the officer read the instructions to him. Rice could not even perform the one-leg-stand test because he kept dropping his foot. And during the testing, Rice exhibited "crazy behavior" including "[j]ust not following directions, just doing the same thing over and over and over again. Real sporatic behavior." Rice was also fixated on obtaining two unopened containers of alcohol from his vehicle before it was towed.

{¶28}  All these facts led Officer Jones to believe that Rice "was very much so impaired" and to arrest him for OVI, even though Rice denied drinking. Officer Jones's testimony was corroborated by the dash cam recording that was admitted into evidence at the suppression hearing.

{¶29}  When determining the facts, the trial court accepted Officer Jones's testimony, which Rice does not challenge. Instead, Rice argues that probable cause was lacking because Officer Jones did not observe any overt signs of alcohol or drug abuse at the time of the arrest, such as the odor of alcohol or drugs, open containers, or the admission of alcohol consumption. And Rice claims the factors Officer Jones relied upon were merely indicative of Rice's involvement in a "severe car accident."

{¶30}  The test for determining probable cause to arrest for OVI examines the collective "facts and circumstances surrounding the arrest," *Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952, and there is no requirement that an officer smell alcohol or drugs on or about the person, find an open container of alcohol, or obtain an admission of consumption. Those are just a few of the many potential facts that, when considered as a whole, would cause a "prudent person" to believe an OVI offense has occurred. Here, Officer Jones noted that he had not smelled alcohol or

drugs before the arrest, but concluded that probable cause existed in light of the other circumstances, including the presence of the masking odor from Rice's cigar.

{¶31} Further, Rice's claim that probable cause could not be based on symptoms he claims are consistent with his involvement in a car accident is unfounded. The record demonstrates that Rice's only injury from the accident was a hand injury, and Rice declined the officer's offer to transport him to the hospital. Thus, there is no basis for us to conclude that Officer Jones should have attributed Rice's condition to the collision. Under the totality of the circumstances, a reasonably prudent person would believe that Rice's slurred speech, impaired motor skills, and erratic behavior were due to intoxication from alcohol or drugs.

{¶32} Since there was sufficient evidence for a reasonable belief that Rice was impaired, the trial court properly determined that Officer Jones had probable cause to arrest Rice for OVI. Accordingly, we overrule the second assignment of error.

### C. Manifest Weight of the Evidence Claim

{¶33} Next we address Rice's fourth assignment of error challenging his convictions as contrary to the manifest weight of the evidence. Rice was convicted of OVI in violation of R.C. 4511.19(A)(1)(a) for driving while impaired, OVI per se in violation of R.C. 4511.19(A)(1)(h) for driving with a breath concentration above .170 grams of alcohol per 210 liters of breath, and reckless operation of a vehicle, in violation of Cincinnati Municipal Code 506-6, for driving without due regard for the safety of other persons or property. As we have already noted, the trial court imposed a sentence for the OVI offense after determining that the OVI offense and the OVI per se offense were allied offenses of similar import subject to merger under R.C. 2941.25. Because the state elected to proceed to sentencing on the OVI per se

11

offense, the sentence for the OVI offense is void, and Rice does not have a valid conviction for OVI in violation of R.C. 4511.19(A)(1)(a). We tailor our weight of the evidence review, therefore, to Rice's two valid convictions.

{¶34} To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

### A. OVI Per Se Breath High Tier

{¶35} R.C. 4511.19(A)(1)(h) prohibits the operation of a vehicle by an individual "with a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath." Rice relies on Officer Fox's testimony from the suppression hearing to challenge the guilty verdict on this count, contending that when the testing deviations are considered, the more credible evidence supported a finding that he tested no higher than 0.166 grams of alcohol per 210 liters of breath. But Officer Fox's testimony relating to the calibration testing of the breathalyzer machine was not presented to the jury at trial. Instead, to diminish the weight of Rice's high-tier breath-test result, Rice relied on his testimony that he had not consumed any alcohol before operating his vehicle and Officer Jones's testimony acknowledging that the urine sample was discarded. Upon review, we cannot say that the jury lost its way when it accepted the state's evidence demonstrating Rice's violation of R.C. 4511.19(A)(1)(h).

## B. Reckless Operation of Vehicle

{¶36} Cincinnati Municipal Code 506-6, the city's reckless operation of vehicle ordinance, prohibits the operation of "a vehicle on any street or highway without due regard for the safety of persons or property." Although Cincinnati Municipal Code 506-6 is titled "Reckless Operation," the phrase "without due regard" sets forth a "negligence standard" that requires the operator of a motor vehicle "to exercise the same degree of care as would a reasonably prudent person under similar circumstances." *State v. Scully*, 1st Dist. Hamilton No. C-990547, 2000 WL 353152 (Apr. 7, 2000).

{¶37} White testified that Rice was driving at an excessive speed and in a dangerous manner just before the collision. Rice contends that White's testimony was not credible and that the evidence demonstrated that the other driver was at fault for the accident. However, White's testimony was corroborated by his 911 call. Moreover, any fault on the part of the other driver did not excuse Rice's operation of his vehicle without due regard for the safety of persons or property.

{¶38} Ultimately, the weight to be given the evidence and the credibility of the witnesses are issues primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus. The jury was in the best position to judge the credibility of the witnesses, and, as with the OVI per se offense, Rice has not demonstrated that the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding Rice guilty of the reckless operation offense. Accordingly, we overrule the fourth assignment of error.

## D. Admission of Challenged Testimony

{¶39}   Rice's third assignment of error relates to the trial court's admission of Officer Jones's testimony about what Davis had told him at the scene of the accident.  Rice maintains that this testimony was inadmissible hearsay under Evid.R. 802, and he contends that the admission of this testimony was not harmless.

{¶40}   Officer Jones was permitted to testify over Rice's objection that Davis had told him upon his arrival at the scene that she was already in her lane and that "the other driver [Rice] must have been either on some drugs or drunk." Ordinarily, the hearsay statement of a nontestifying declarant offered to prove the truth of the matter assert is inadmissible as evidence at trial.  *See* Evid.R. 801(C).  The state argues that Davis's statements were not offered for the truth of the matter asserted or, if admitted for the truth, they were admissible under the hearsay exception for excited utterances.  The state argues also that any error in the admission of this testimony was harmless because it had no effect on the outcome of this case.

{¶41}   Under the harmless error doctrine, this court may grant a new trial only upon evidentiary errors that affect a substantial right.  *See* Crim.R. 52(A). When engaging in harmless error review, this court "must ascertain (1) whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict, (2) whether the error was not harmless beyond a reasonable doubt, and (3) whether, after the prejudicial evidence is excised, the remaining evidence establishes the defendant's guilt beyond a reasonable doubt." *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 50, citing *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37.

{¶42}   Assuming the trial court erred as Rice contends, we conclude beyond any reasonable doubt that Rice was not prejudice by the admission of Officer Jones's

challenged testimony, and the admission of the testimony, even if in error, had no impact on the verdicts. We also conclude that the remaining evidence admitted at trial established Rice's guilt beyond any reasonable doubt. As the state contends, to find reversible error here would rely upon the untenable suggestion that absent the challenged testimony, the jury, in finding Rice guilty of the charged offenses, would have disregarded the high-tier result of a valid breath test, the testimony of eyewitness White that was corroborated by his 911 call, and Officer Jones's testimony that was corroborated by the dash cam video of his investigation.

{¶43} Because Rice has failed to demonstrate that the trial court's admission of Officer Jones's testimony resulted in reversible error, we overrule the third assignment of error.

### III. Conclusion

{¶44} Upon our review, we affirm Rice's convictions for the OVI per se breath offense in the appeal numbered C-160669, and for the reckless operation of a vehicle offense in the appeal numbered C-160670. Because the trial court imposed a void sentence for the OVI offense, we vacate that sentence and remand the cause in the appeal numbered C-160668 for the trial court to correct that judgment of conviction.

Judgment accordingly.

**MOCK, P.J.,** and **DETERS, J.,** concur.

Please note:
   The court has recorded its own entry this date.