[Cite as *State v. Panzeca*, 2020-Ohio-4448.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190474 |
| | | C-190475 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-19TRC-9140A, B |
| vs. | : | |
| JOSEPH PANZECA | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: September 16, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} After a bench trial, defendant-appellant Joseph Panzeca was convicted of operating a vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) and operation without reasonable control in violation of R.C. 4511.202(A). He has appealed, and argues in two assignments of error that the trial court erred in considering the testimony of a witness who was not competent to testify, and that his convictions were based upon insufficient evidence and against the manifest weight of the evidence.

{¶2} For the reasons discussed below, we overrule the assignments of error and affirm the judgments of the trial court.

### *Factual Background*

{¶3} Delhi Township Police Officer Steve Sommers testified that he responded to a call about a car accident at the intersection of Rapid Run Road and Sundance Road in which a vehicle had struck a concrete sewer culvert. When Sommers arrived on the scene, he saw tire tracks that went off the road and debris all over the roadway, including large chunks of concrete, metal rebar from the sewer grate, and automotive parts. Sommers observed a bumper and pieces of a vehicle's undercarriage in the roadway.

{¶4} Sommers testified that a mile down the road he discovered Panzeca's vehicle parked on the side of the road. As he pulled up, he witnessed Panzeca exit the vehicle from the driver's side. Sommers walked around Panzeca's vehicle and noticed that only the driver's side airbag was deployed, and that there was "heavy front-end damage" to the vehicle. He testified that Panzeca's vehicle was missing its

2

front bumper, the undercarriage had been damaged, and that the damage "line[d] up" with the debris on the road by the tire tracks.

{¶5} Video from Sommers's body camera was admitted into evidence and played during trial. When Sommers asked Panzeca what had happened, Panzeca responded, "I kinda messed my car up." Panzeca informed Sommers that he was coming from Linnie's, a local bar. When asked why he did not stop after hitting the sewer culvert, Panzeca shrugged. When asked if he realized that he had driven through people's yards, Panzeca nodded yes. Another officer on scene asked Panzeca where he was headed, and he responded, "Right here." He denied consuming any alcohol. Sommers testified that Panzeca had slurred speech, seemed unsteady on his feet and was swaying, had dilated and glassy eyes, and had "the strong odor of an alcoholic beverage" coming from his person.

## *First Assignment of Error*

{¶6} In his first assignment of error, Panzeca argues that the trial court committed plain error in considering testimony from a witness who was not competent to testify as a witness at trial. Panzeca contends that Sommers was not competent to testify because the state did not establish that he was wearing a distinctive uniform as required by R.C. 4549.16. R.C. 4549.16 states:

> Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was not wearing a

distinctive uniform in accordance with section 4549.15 of the Revised Code.

{¶7} Panzeca admits that that he did not raise the issue of the officer's competency at trial and contends that we should review this issue under the plain-error standard of review. However, we find that because Panzeca did not raise the issue of Sommer's competency at trial, he has waived the issue on appeal.

{¶8} Ohio courts have held that "the incompetency of a witness may be waived by allowing him to testify without objection, with knowledge of his incompetency." *State v. Clark*, 10 Ohio App.3d 308, 311, 462 N.E.2d 436 (3d Dist.1983); s*ee State v. Johnson*, 2d Dist. Montgomery No. 20624, 2005-Ohio-1367, ¶ 14 (where the defendant failed to object regarding the officer's competency to testify at trial, he waived that issue for purposes of appeal). Thus, "the failure to object to the competency of a witness at the proper time is a waiver of it." *Clark* at 311.

{¶9} Accordingly, the first assignment of error is overruled.

### Second Assignment of Error

{¶10} In his second assignment of error, Panzeca argues that his convictions for driving under the influence in violation of R.C. 4511.19(A)(1)(a) and operation of a motor vehicle without reasonable control in violation of R.C. 4511.202 were based upon insufficient evidence and were against the manifest weight of the evidence.

{¶11} The test for determining if the evidence was sufficient to sustain a conviction is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond

a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine, the court is not to weigh the evidence. *MacDonald* at ¶ 12.

{¶12} Panzeca was convicted of OVI under R.C. 4511.19(A)(1)(a), which provides, "No person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶13} "Operate" means to "to cause or have caused movement of a vehicle." R.C. 4511.01(HHH). The state was not required to produce direct evidence of Panzeca operating the vehicle. Rather, the element of "operate" in R.C. 4511.19(A)(1)(a) may be satisfied by circumstantial evidence. *See State v. Colyer*, 1st Dist. Hamilton Nos. C-120347, C-120348 and C-120349, 2013-Ohio-1316, ¶ 8 (although the officer discovered the defendant in a stationary vehicle on the side of the road, circumstantial evidence demonstrated that the defendant had operated the vehicle while impaired).

{¶14} Sommers testified that when he discovered Panzeca's vehicle, he witnessed Panzeca exit the car from the driver's side, only the driver's side airbag was deployed, and Panzeca said something to the effect of, "I kinda messed my car up." Sommers asked Panzeca why he did not stop after hitting the culvert, and Panzeca shrugged. Sommers also asked him if he realized that he had driven through people's yards, and Panzeca nodded yes.

{¶15} To prove that Panzeca was "under the influence of alcohol," it was not necessary for the state to prove a particular level of alcohol concentration in his body.

*See State v. Bakst*, 30 Ohio App.3d 141, 146, 506 N.E.2d 1208 (1st Dist.1986). Rather, the state was required to prove that Panzeca had consumed alcohol in a quantity that had "adversely and appreciably impaired [his] actions or mental processes and deprived [him] of that clearness of intellect and control of [him]self which he would otherwise have had." *See State v. Hall*, 2016-Ohio-783, 60 N.E.3d 675, ¶ 29 (1st Dist.), quoting *Bakst* at 145.

{¶16} Field-sobriety tests are not required in order to obtain an OVI conviction. *City of Cleveland v. Giering*, 2017-Ohio-8059, 98 N.E.3d 1131, ¶ 30 (8th Dist.). To prove impairment, the state can rely on "physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol." *Id.* In *Colyer,* this court held that the evidence was sufficient to sustain the defendant's OVI conviction despite the lack of field-sobriety tests where "the record is replete with evidence of his intoxication, including his slurred speech, his strong odor of alcohol, his bloodshot eyes, and his general demeanor, as well as the evidence that his car recently had been in an accident." *Colyer*, 1st Dist. Hamilton Nos. C-120347, C-120348 and C-120349, 2013-Ohio-1316, at ¶ 9.

{¶17} Sommers testified that he discovered Panzeca approximately a mile down the road from the scene of the accident and that the damage to Panzeca's vehicle was consistent with the scene of the accident. Sommers testified that Panzeca had slurred speech, seemed unsteady on his feet and was swaying, had dilated and glassy eyes, and had "the strong odor of an alcoholic beverage" coming from his person. He testified that Panzeca told him that prior to the accident he had been at Linnie's, a local bar. We find that Panzeca's conviction for OVI was based upon sufficient evidence.

{¶18} Although Panzeca claims that his conviction for operation without reasonable control under R.C. 4511.202 was based on insufficient evidence, he presents no argument or reasoning as to why. In order to convict Panzeca for operation without reasonable control, the state was required to prove that he operated a motor vehicle on a street or highway without being in reasonable control of the vehicle. *See* R.C. 4511.202. Operating a vehicle while intoxicated and crashing into a sewer culvert on the side of the road demonstrates that Panzeca was not in reasonable control of his vehicle. We find that the evidence was sufficient to sustain Panzeca's conviction under R.C. 4511.202.

{¶19} Once we determine that there was sufficient evidence presented to sustain the convictions, we consider Panzeca's claim that his convictions were against the manifest weight of the evidence. In doing so, "we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned.' " *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.*

{¶20} "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16. In announcing its guilty verdicts, the trial court explicitly found Sommers to be a credible witness.

{¶21} Panzeca denied consuming any alcohol, but that was contradicted by the body camera video and Sommers's testimony. Panzeca argues that the physical

7

symptoms observed by Sommers were the result of a head injury, but at trial he did not produce any evidence of a head injury, and Sommers testified that he did not observe any injuries on Panzeca. Panzeca's convictions were not against the manifest weight of the evidence. The second assignment of error is overruled.

### *Conclusion*

{¶22} For the foregoing reasons, we overrule the assignments of error and affirm the judgments of the trial court.

Judgments affirmed.

ZAYAS, P.J., and MYERS, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.