[Cite as *State v. Hill*, 2021-Ohio-294.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190638 |
| | | C-190639 |
| Plaintiff-Appellee, | | C-190640 |
| | | C-190641 |
| vs. | : | TRIAL NOS. C-19CRB-10074A |
| | | C-19CRB-10074B |
| RICSHAWN HILL, | | C-19CRB-10074C |
| | | C-19CRB-10074D |
| Defendant-Appellant. | : | |
| | : | *O P I N I O N.* |


Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  February 3, 2021


*Andrew W. Garth*, Interim City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Keith C. Forman*, Assistant Prosecuting Attorney for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Defendant-appellant Ricshawn Hill appeals his convictions, following a bench trial, for four counts of cruelty against companion animals. In four assignments of error, Hill challenges the sufficiency and the weight of the evidence supporting his convictions, contests the propriety of an in-court identification, and argues that the trial court erred in admitting both hearsay and improper other-acts evidence.

{¶2} Following our review of the record, we find that the trial court erroneously admitted a deputy dog warden's testimony concerning statements made to him from persons at the scene about who owned the dogs, because that testimony was inadmissible hearsay. But because Hill admitted both to ownership of the four animals that were the subject of his convictions and to his inability to care for them, we find that the trial court's admission of the hearsay statements was harmless error.

{¶3} We further find that the trial court's admission of video evidence concerning the conditions of two animals that were not the subject of the charges was erroneous because the evidence was irrelevant and was improper other-acts evidence under Evid.R. 404(B). But because the record contained ample evidence regarding the conditions of the four dogs that were the subject of Hill's convictions, specifically that those animals had been tortured, tormented, or had an act of cruelty committed against them, and because Hill admitted to ownership of the dogs and to his inability to care for them, we find that the admission of the improper other-acts evidence was harmless error and we affirm the trial court's judgments.

### *Factual Background*

**{¶4}** Hill was charged with four counts of cruelty against companion animals in violation of R.C. 959.131(D)(1).

**{¶5}** At trial, Deputy Brandon Henry, a dog warden with the Society for the Prevention of Cruelty to Animals ("SPCA"), testified that he responded to an anonymous tip that the SPCA received regarding animals in a garage at 1873 Herron Avenue. Deputy Henry spoke to the residents of the home, and testified over objection that the residents told him the dogs were in the garage, denied ownership of the dogs, identified themselves as "uncles," and stated that "he hadn't been by to take care of them."

**{¶6}** Deputy Henry found four dogs in the garage in "filth and squalor." He testified that the garage lacked ventilation and that the floor was covered in feces that he estimated had been there for multiple weeks. Deputy Henry described the dogs as energetic and kind, but noted that they were underweight and malnourished. There were no windows or light in the garage, and it contained no food or water for the animals. According to Deputy Henry, the odor coming from the garage was indescribable. In addition to these four dogs, Deputy Henry testified that two full-grown dogs were found on the back porch in a metal crate that was suited for one dog. The deputies seized the four dogs found in the garage, but not the dogs found on the porch.

**{¶7}** A sergeant who responded with Deputy Henry recorded a video of the conditions in the garage. Video of the two dogs found on the back porch was also taken and played for the court over objection.

{¶8}    A neighbor provided a telephone with Hill's number programmed in that Deputy Henry used to call Hill.  Deputy Henry testified that during their telephone conversation, Hill admitted to ownership of the four dogs found in the garage.  Hill told Deputy Henry that the dogs were his, that he did not want them to be seized, and that he had been unable to take care of the dogs because he had been in a legal battle and "locked up."  Over objection, Deputy Henry identified Hill in court as the person to whom he had spoken on the phone.  Deputy Henry testified that he had never met Hill in person, but the person whom he spoke to on the telephone provided a social security number.  Deputy Henry verified that the social security number belonged to Ricshawn Hill.  He also obtained a photograph of Ricshawn Hill when verifying the information, and testified that the photograph was Hill, the defendant in court.

{¶9}    The trial court found Hill guilty of all four counts of cruelty to companion animals and imposed a sentence of 90 days in jail for each offense, a $200 fine, and court costs.  The sentences for the offenses were ordered to be served concurrently.

### Sufficiency and Weight

{¶10}  In his first assignment of error, Hill challenges the sufficiency and weight of the evidence supporting his convictions.

{¶11}  In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  In contrast, when considering a challenge to

the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶12} Hill was convicted of four counts of cruelty to companion animals in violation of R.C. 959.131(D)(1), which provides that "[n]o person who confines or who is the custodian or caretaker of a companion animal shall negligently * * * [t]orture, torment, or commit an act of cruelty against the companion animal." Hill specifically argues that the state failed to establish that he was the custodian or caretaker of the animals and that an act of cruelty was committed against them.

{¶13} We first consider Hill's argument that the state failed to establish that he was the custodian or caretaker of the animals. Hill admitted in a telephone call with Deputy Henry that the four dogs found in the garage belonged to him. Hill, however, contends that the state failed to establish his identity as the person with whom Deputy Henry spoke on the phone. Deputy Henry, using a telephone from a neighbor that had Hill's telephone number programmed in, called Hill. The person who answered the deputy's call identified himself as Ricshawn Hill, provided a social security number, and admitted to ownership of the dogs and his inability to care for them. Despite having the opportunity to do so, the person to whom Deputy Henry spoke never once denied ownership of the animals. Deputy Henry then looked up Hill in the system and confirmed that the social security number provided during the telephone call belonged to Ricshawn Hill. Viewed in the light most favorable to the prosecution, the deputy's verification of Hill's identifying information coupled with

Hill's admission to ownership of the animals was sufficient to establish that he was the custodian or caretaker of the animals. *See Jenks* at paragraph two of the syllabus.

{¶14} We next consider Hill's argument that the state failed to establish that acts of cruelty had been committed against the animals. R.C. 959.131(A)(2) provides that the definitions of cruelty, torment, and torture, as used in the statute, have the same meanings as the definitions set forth in R.C. 1717.01. R.C. 1717.01(B) provides that " 'Cruelty,' 'torment,' and 'torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief."

{¶15} Deputy Henry testified that the dogs were found in filth and squalor, in a garage with a floor that was covered in feces. The dogs were kept in a garage that had no ventilation or light and contained no food or water. They were also visibly underweight and malnourished. This testimony was sufficient to establish that an act of cruelty, torment, or torture had been committed against the dogs. *See Jenks* at paragraph two of the syllabus.

{¶16} We further hold that Hill's convictions for cruelty against companion animals were not against the manifest weight of the evidence. While Hill was not a resident of the home where the animals were found, he admitted to ownership of dogs and to his inability to care for them. This was not the rare case in which the trier of fact lost its way and committed such a manifest miscarriage of justice in finding Hill guilty that his convictions must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶17} The first assignment of error is overruled.

### *In-Court Identification*

**{¶18}**   In his second assignment of error, Hill argues that the trial court erred in admitting Deputy Henry's in-court identification of Hill.

**{¶19}**   At trial, Deputy Henry identified Hill as the person to whom he had spoken on the phone and who had admitted to ownership of the four dogs found in the garage.   Defense counsel objected to this identification on the grounds that Deputy Henry had never seen Hill before the trial.   The trial court overruled Hill's objection.

**{¶20}**  Deputy Henry testified that he called Hill on a neighbor's telephone that was programmed with Hill's number.  The person to whom Deputy Henry spoke on the phone identified himself as Ricshawn Hill, immediately admitted to ownership of the dogs, and provided a social security number that Deputy Henry later verified belonged to Ricshawn Hill.  Deputy Henry also obtained a photograph of Ricshawn Hill when verifying the information, and testified that the photograph was Hill, the defendant in court.  We hold that the in-court identification of Hill was reliable and that the trial court did not err in admitting it.  *See State v. Shelton*, 1st Dist. Hamilton No. C-170547, 2018-Ohio-3895, ¶ 35.

**{¶21}**  The second assignment of error is overruled.

### *Hearsay*

**{¶22}**  In his third assignment of error, Hill argues that the trial court erred in admitting hearsay evidence, specifically Deputy Henry's testimony regarding statements made by residents of the home where the dogs were found.  We review a trial court's admission of hearsay statements for an abuse of discretion.  *State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 15 (1st Dist.).

{¶23} Deputy Henry testified that the residents of the home told him that the dogs were in the garage, denied ownership of the dogs, and stated that "he hadn't been by to take care of them." Defense counsel objected to this testimony, arguing that it was hearsay. The state contended that the statements were not being offered for the truth of the matter, but rather to show the state of mind of the deputy and explain his conduct. The trial court agreed with the state and allowed the testimony because it explained "why he did what he did, the effect on the listener."

{¶24} "[E]xtrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). So when testimony is offered to explain the subsequent investigative activities of police officers and not to prove the truth of the matter asserted, it may be admissible as nonhearsay in certain circumstances. *Id.* "[I]n order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27; *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 20.

{¶25} Here, the statements were not admissible as nonhearsay because they connected Hill with the offenses. The residents denied ownership of the dogs and told Deputy Henry that "he hadn't been by to take care of them." This directly implicated Hill as the custodian or caretaker of the four dogs in the garage. We

therefore hold that the trial court abused its discretion in allowing Deputy Henry to testify as to residents' statements.

{¶26} Having determined that these statements were admitted improperly, we must determine what effect, if any, their admission had on the outcome. Because Hill objected to these statements, we review for harmless error. *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18; *State v. Hayes*, 1st Dist. Hamilton No. C-190461, 2020-Ohio-5322, ¶ 51. Under this standard, the state has the burden of establishing that the error did not affect the defendant's substantial rights. *Jones* at ¶ 18. A defendant's substantial rights are affected where the error is prejudicial and affected the outcome of the trial. *Id.*; *Hayes* at ¶ 51.

{¶27} Following our review of the record, we find that admission of the hearsay statements was harmless error. Absent the residents' statements, ownership of the dogs was clearly established; Hill admitted that the four dogs in the garage belonged to him and that he had been unable to take care of them. We cannot say that the admission of the hearsay statements affected the outcome of the trial. The third assignment of error is overruled.

### Other-Acts Evidence

{¶28} In his fourth assignment of error, Hill argues that the trial court erred in permitting other-acts evidence to be introduced in violation of Evid.R. 404(B). "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, Slip Opinion No. 2020-Ohio-4440, ¶ 22.

{¶29} Hill specifically argues that it was error to admit the video recording of the two dogs found on the back porch. Defense counsel objected to this portion of the video being played for the court, arguing that it was not relevant because Hill was

9

not charged with any offense relating to these particular dogs. The state argued that the recording was relevant to the totality of the circumstances concerning the conditions in which the dogs were kept. The trial court overruled the objection, stating that the particular portion of the video was "relevant to the totality of the circumstances."

{¶30} Under Evid.R. 401, relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence concerning the conditions of the two dogs found on the back porch was not relevant to determining whether Hill committed the offenses of cruelty to companion animals with respect to the four dogs found in the garage. Hill did not reside at the home where these two animals were found, and the record contains no testimony or evidence that Hill was the custodian or caretaker of them. Further, Hill was not charged with any offense pertaining to these two dogs. The video evidence concerning the condition of the two dogs found on the back porch was irrelevant and inadmissible.

{¶31} We further find that, even if this evidence had some probative value, it was inadmissible under Evid.R. 404(B). Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under Evid.R. 404(B), other-acts evidence is only admissible when it is probative of a nonpropensity-based issue. *Hartman* at ¶ 22.

{¶32} When deciding whether evidence is admissible for a nonpropensity purpose, a threshold question as to whether the evidence is relevant must be answered. *Id.* at ¶ 24. And "the inquiry is not whether the other-acts evidence is relevant to the ultimate determination of guilt. Rather, the court must evaluate whether the evidence is relevant *to the particular purpose* for which it is offered." *Id.* at ¶ 26.

{¶33} The state contends that the video evidence concerning the conditions of the two dogs found on the back porch was relevant to determining Hill's knowledge and his lack of mistake or accident. We disagree. As discussed above, the record contains no evidence linking Hill to these two dogs. Absent any evidence that Hill was the custodian or caretaker of these animals, evidence concerning their condition was not relevant to establishing Hill's knowledge of the condition of the four dogs found in the garage or that Hill's failure to care for those dogs was not a mistake or accident. We consequently find that the video evidence depicting the conditions of the dogs on the back porch was inadmissible under Evid.R. 404(B).

{¶34} Although the trial court erred in admitting this evidence, we find that any resulting error was harmless. *Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, at ¶ 18. The record contained ample evidence that the dogs were malnourished and were kept in filthy conditions, specifically in a garage that had a floor covered in feces, lacked ventilation and windows, and did not contain food or water for the animals. The record also contained evidence that Hill admitted to ownership of the dogs and to his inability to care for them. We cannot find that Hill would have been acquitted but for the admission of this video evidence.

**{¶35}** Hill's fourth assignment of error is overruled. The judgments of the trial court are, accordingly, affirmed.

Judgments affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.